Board of Probation and Parole, Appellate No. 23-1123. Good morning, and may it please the Court. Joseph Kolker on behalf of Jeffrey Herrera. With the Court's permission, I'd like to reserve four minutes for rebuttal. I'll be granted. Thank you. This Court should reverse the dismissal of Mr. Herrera's complaint for three reasons. First, Mr. Herrera plausibly stated the elements of an Eighth Amendment over-detention claim, explaining that he was held without any legal basis for seven months after his legal sentence ended. The Commonwealth's lead argument to the contrary is just based on a misreading of the sentencing court's orders. Let's talk about that, if we could. Mr. Herrera's original complaint and the documents he attaches makes no mention of a February 2017 order, where it appears the sentencing court amended its original sentence to take away credit for time served for a period from December 16, 2014, to December 4, 2015. And it appears that the Attorney General is relying on that period to demonstrate he was not in custody beyond the March date that he contends is applicable. So how do you respond to the Attorney General's discussion of that 11-month period for which Herrera originally got credit and then it was taken away? So with respect to this argument, I agree with the question that some of this was not apparent on the face of docket number one in the district court, the original complaint. But the sentencing court documents in appendix 183 and 185, on which the Commonwealth is relying, I think rebut the Commonwealth's reading of the record on appeal. So your position is the court can consider 183 and 185 even though they're outside the original complaint because they are judicially noticeable? What's your theory of why we can take into account those documents? This court has held that, you know, a document that contradicts the allegations in a complaint can't be considered at the motion-to-dismiss stage without converting it into a motion for summary judgment. But where the documents in question are integral to the complaint, the broadly construed pro se complaint here, and they're not contradicting anything in the complaint, they can be considered. And I note that the Commonwealth itself has suggested that the court resolve this dispute by looking at appendix 183 and 185. I think those documents in the record rebut the Commonwealth's reading of the record for two very clear reasons. The Commonwealth asserts that Mr. Herrera's original maximum date was a six-year sentence that began running on March 2013, the date of the original sentencing. But as appendix 183 and 185 make clear, that sentence was reduced from six years to five and a half years and also began running at the time of the original arrest in September 2012, not March 2013. But then if you're going through this analysis, you're talking about a calculation issue, and our case law seems to suggest in cases where there's a dispute about calculation that we'd have to get involved in the heck analysis. I agree that in cases in which the claim is I'm entitled to additional time served and the board disagrees with me, but there's no court order in my favor that that is heck barred. But the difference here is that there's a court order specifying the time credit served, and it's that court order that takes this outside of heck's analysis. And the court order you're referring to is the February order? I would point the court to both of the orders in conjunction, the February and the January order together. And I think if you look at those two orders in conjunction, you'll see that just doing the math, as we explained in our reply brief, that the 11 months at liberty issue that the Commonwealth points to was already accounted for in this analysis. Should our focus be on that court order or on the decision of the board itself, where it appears on the face of it that there's not a dispute, at least from the board's perspective, that there was an overdetention here? That there's no dispute from the board's perspective that there was an overdetention here? Correct. That is how I read Appendix 254, the Notice of Board Decision, which is a document that the Commonwealth does not substantively address, focusing instead on the acceptance for state supervision. I do think that Appendix 254 puts this case outside of heck because there is no dispute. I don't understand what basis there would be. And actually, when the board comes up, they should be prepared to talk with us about 254 because I have some questions about that document as well. Can you tell us what it means to have a Department of Corrections sentence restructure? That is not a question that I can find any answer to in the record on appeal. I think that it may be that some of the types of arguments that defendants often raise in these types of cases may be defenses that can be asserted with discovery and on a record for summary judgment. On the record that we have, there is no answer to that question, Your Honor. So District Court thought it had enough information from the complaint to decide the statute of limitations issue, including equitable tolling. What is wrong with that analysis? So, Your Honor, the Commonwealth actually concedes that the ordinary rule, and I don't think this is disputed, is that a pro se plaintiff should be permitted to amend unless doing so would be futile. And we explained in our opening brief some of the bases on which Mr. Herrera can plausibly amend to allege equitable tolling or a later approval date. The Commonwealth does not dispute in the amicus brief that at least one of those bases would be futile, instead just saying he's had enough chances. Because there's no dispute that amendment wouldn't be futile, I think the proper course of action is to reverse and remand and give Mr. Herrera a single chance to lay out his best case for equitable tolling, which I think he could do at a minimum by pointing to his deprival of access to legal materials, pen and paper, while in segregated housing, which is the kind of extraordinary circumstance that would prevent anyone from filing a complaint. What about the exhaustion period? Wouldn't that also toll the time? I think the exhaustion period would also toll the time. From the limited record we have on appeal, because Mr. Herrera wasn't allowed to file an amended complaint, laying out the specific dates justifying it, I don't know one way or another whether that would tip the balance here. But from your point of view, it would be a ground to allow for amendment to see whether or not he can allege such facts? Correct, Your Honor. If I could take you back to Judge Schwartz's initial question, because our case law and that of the Supreme Court has language that could be construed to say that any time there is a challenge to the duration of a sentence, that that triggers the heck bar. But we also have a series of cases from the Fifth Circuit that sort of mirror what we have here, where they take the view where there's not a disagreement about what the actual time, duration of the sentence was supposed to be, that heck isn't even in the picture. And so do you agree with the Fifth Circuit's approach? And so does the success of your argument rest on the, at 254, the board's amended parole violation max date of 3-4-19? So I do agree with the Fifth Circuit's approach, and I do think it's the approach that this court should adopt. I also think that the decisions of this court, the precedential decisions of this court and the Supreme Court, discussing duration of confinement more broadly, as opposed to just a sentence, that language is out there, but it has never been used in a case involving an Eighth Amendment overdetention claim of this nature. It's been used in cases involving other types of challenges, like a claim that a plaintiff shouldn't have been denied parole, which is a discretionary decision that provides a legal basis for continued detention, as opposed to this claim, which is that there was no legal basis for the extended detention. But part of the problem here is we don't know what the basis was, right? And, you know, as you acknowledge, even the sentence restructure in the appellate record, and as far as I can tell in the district court record, there's no explanation of what caused the extension or the retraction. So is it also possible on remand that something would come to light indicating that the HEC bar does apply? It is certainly possible that discovery could show that this case is closer to a case in which the HEC bar has been found to apply. I'm not disputing that. But on the record on appeal, we, you know, grant all reasonable inferences to Mr. Herrera's allegations, which is a unique case because it's not just bare allegations. They're supported by sentencing court documents and board documents that the Commonwealth does not dispute are valid. And I have every reason to think are, you know, what actually happened. The fact that we don't know why they did this is not a problem at the pleading stage, because Mr. Herrera has specifically alleged that there was no notice in hearing. There was no revocation of parole. There was no disciplinary infraction that would have justified a longer detention. All of the sort of there's no, you know, there were no other sentences or other criminal convictions lurking around. All of the ordinary reasons that you might expect to justify a continued detention, none of those were present. And I haven't heard anything from the Commonwealth rebutting that. Is there anything on the record that even tells us how he learned in February 2018 that there had been a change to the from his point of view, a release date? I don't think that the complaint even broadly construed, you know, I understand he may have received that notice through his dealings with the employees, McGinnis and Gibson, whom he would name as defendants on remand. I see. And I want to just go back to Heck for a second. Let's assume Heck applies. Could an argument be made that the document at 254 reflects a favorable termination, that he raised a complaint about his release date and that this document demonstrates one could read it as saying your release date is actually what you say it is? I think particularly if I see my time has expired, but my colleagues have questions, of course. Thank you, Your Honor. I do think that Appendix 254 provides a plausible basis at the pleading stage for favorable termination, because Mr. Herrera has alleged that he was exhausting all of his administrative remedies. And then we see this result, Appendix 254, which not only releases him, but the fact that it also retroactively says the maximum date was seven months in the past. That's an extraordinary fact to have in the record. And I think at a minimum, you could show favorable termination on that basis. Could you help us distill and articulate from our case law and that of the Supreme Court what the line is between, you know, cases where Heck does apply because it's a challenge to the duration of the sentence and when, as you argue, it doesn't, when it's the execution of the sentence. So I think that some of the key language in Heck that the Supreme Court has relied on a couple of times in the Fifth Circuit, also adopted in Hicks, is this language from Muhammad saying that the judgment that matters in Heck is a judgment of conviction or sentence. I think that if you look at this thread of emphasis on sentence in all of these cases, what the principle that is there is, you know, are you challenging a legal determination that there's a legal basis for extending the sentence, or are you not? Are you saying there was no legal basis? I think, you know, a limiting factor on this is that if there was an obvious legal basis for the detention, then that individual probably wouldn't have even pled an Eighth Amendment over-detention claim, much less satisfy Heck. So I would say that, you know, some of the language that we have that's helpful is the Commonwealth says that the duty and authority of the agencies at issue here is to faithfully implement the sentence of the courts. And so I would say that the line is if you are, if the claim is just that these agencies essentially ministerially fail to faithfully implement the sentence, that's an Eighth Amendment over-detention claim that isn't subject to Heck. How does that square with a case where there's a miscalculation of good time credit, for example? So I think most of the good time credit cases involve at least arguably a challenge to, a challenge to a determination that the, that there was a valid legal basis for, for further detention. I'm not sure that there are cases. I'm not sure that there's any binding case law on point where the claim was essentially you made a ministerial calculation error in adding up good time credits. I think that might be a closer case. I think most of the cases involving good time credits or parole denials or revocations involve essentially a plaintiff saying, look, you were wrong when you denied me these good time credits. Another distinguishing factor between those cases and this cases, in this case, is that even in those cases involving a pure calculation error, the plaintiff is actually asking the board to alter the sentence in his favor. And that is what we are not asking. So your view is this is not a calculation case? On the record, on appeal. Correct.  No. Okay. Thank you. Thank you. Good morning. May it please the court. My name is Kathleen Wildy Labay and I'm a deputy attorney general for the Commonwealth, the amicus in this matter. We appreciate the opportunity to be heard and respectfully submit that the court should affirm because the academic issues raised, while very interesting and really worthy of a great discussion, are not issues that are actually relevant to this case because the statute of limitations lapsed. And moreover, there's no actual over-incarceration. As we've been discussing, there's a lot of complexity to whether over-incarceration sounds in the Fourth Amendment, the Eighth Amendment, the Fourteenth Amendment. We have circuits split at least three ways. And there's a lot of really interesting issues that would be great in a law review article or perhaps in the right case. But counsel, don't we need to reach them? Because on the statute of limitations issue, as we just discussed, there is statutory tolling. There's arguments that on the basis of what's in the complaint appear could be raised for equitable tolling. And he hasn't had an opportunity to amend. But, of course, we could affirm on a different basis. And that requires us to get to the Seventh Amendment issue. It is true that you can affirm on any basis supported by the record, of course. The tolling issue was apparent on the face of the complaint from our perspective. There's no argument whatsoever that this was a case of wrong forum. The idea of extraordinary prevention is also disputed, given, for one, that he actually successfully went to court and had many, many cases. I think about seven cases in the district court, including this one. Where's that in front of us, though? We'd have to go and take judicial notice of all that other activity. If you look at the pleadings, he makes a statement about his own mental health. He makes some statements about access due to COVID. And he represents exhaustion. So, one is exhaustion being a statutory toll. Do you honestly think that we would be exercising appropriate authority in saying he's got no basis to ever prove that his claim was timely? I understand the court's perspective being that we do construe complaints liberally. And we do take things at face value. But in this particular case, the statute of limitations timing is apparent. And this is well outside a lot of those types of equitable tolling, given that this is, like, over a year past when the statute of limitations had lapsed. How do we know that, given that there's no information before us about the length of the mental health issue, for example? Or how long he was denied access to documents or to the library? When we have a pro se plaintiff, and there's at least those allegations in the documents before us, shouldn't he have an opportunity to amend? In this particular case, the information in the complaint and associated documents is a little tricky. You know, it's definitely not a paradigm of clarity. But a lot of those issues, such as access to pen and paper, mental health issues, were addressed through Mr. Herrera's filings. This is also something that was addressed in the reconsideration motion, which the district court did consider on the merits, really did consider all the additional documentation that was before it. I believe even the documentation related to the other case that Mr. Herrera says was wrongfully put on the docket for this particular case. Did the district court give him the opportunity to amend to address tolling issues? I do not believe so, Your Honor. That was considered to be a futility issue because the statute of limitations being apparent, there's nothing you can do to change the statute of limitations in terms of going back in time. So in this case, The court's reasoning was actually that there's the Seventh Amendment bar. So let's talk about that. And what are we to make of Appendix 254, where the board itself designates the March 16th date as the proper date for release? So those are two separate issues, Your Honor, if I understand correctly. With respect to 254 and the, you know, whether that's a favorable termination, whether that's something that would indicate, you know, perhaps something that could go against the HEC bar. That's just one out of context, you know, P&P document. That is certainly not a court ruling. It certainly is not anything that could have legally changed the duration of sentence or, for example, time served, because that's something only courts in Pennsylvania can do. It's something that we've kind of pieced together from his arguments and his various filings that relates to both his parole violations, as well as there's a Gagnon state ruling that he had had in his appeal. What do you mean by that? Basically, there had been a question as to state law on whether parole violations have to have a separate proceeding and how things are calculated in terms of duration, concurrent versus time served versus consecutive. There was a little bit of an adjustment from that. And we get that by piecing together his various pleadings where he starts saying different dates. And I admit it's kind of tricky because he is pro se, and we all kind of made charts and had to lighten that up. But the way to accept his factual allegations is true. I mean, a lot of your arguments in your brief really look like summary judgment type arguments, not arguments about the sufficiency of the pleading and whether it should be permitted to be filed under 1915 and survival 12b-6. And if we look at the plain words on 254, it is telling us that something happened in July of 2019 that caused the board to rescind its action and as a result of something called a restructure, which as Judge Krause asked your colleague what that was about, maybe you can tell us. There was clearly an adjustment to a date, maximum of March 2019. And arithmetic tells us if he didn't get out until either October or November, depending on what date you rely on, he was over detained for that period. How can we say that there is no plausible claim that's worthy of being encouraged to go forward in light of that plain document? Well, going back to the point on summary judgment versus dismissal, Your Honor, if we take his complaint at face value, that is where this March number keeps coming up because he's repeatedly stated that his correct date would have been March 4th, 2019. Well, he points to other documents that have that same date in it that were generated by the defendants or someone from the state. Right. And so, Your Honor, if we take that particular date and then we add in the two-year statute of limitations that everyone agrees applies, that's where we come up with the fact that this is on the face of the complaint untimely. I'm not asking about statute of limitations. I'm talking about viability of a claim to go forward. I understand. I was just getting to the summary judgment versus dismissal point that you began with. But I wasn't talking about statute of limitations. I was talking about permitting this cause of action of wrongful over-detention to proceed just based on the face of this document. And if we let's ignore this document and we go to his pleading and the documents attached to it, he still has enough allegations presented, if accepted as true, which we must do, that he believed from documents he received, he was supposed to be out in March. He didn't get out until November or October or November. Why isn't that enough for the claim to proceed? Your Honor, it's not enough because it is inherently speculative in the way it is written. It says someone somewhere did something, which is not sufficient to give any of the defendants in this case the due process that they need. That's a different problem. That's a sufficiency in terms of using criminal parlance to build particulars. I'm talking about pieces of paper taking away his writings that were generated by the Commonwealth that say you should have been out in March. And he was still in custody in October or November by representations that are in even the Commonwealth's brief. So I'm having a difficult time understanding why that is not sufficient to go forward at the Rule 12 phase or the 1915 phase. In particular, I would point the court to the record at 183, and that is that district court order, which says that the time for credit served was incorrect because he was given time served when he was actually out at liberty. That document is also before the court and is plain on its face where we cannot ignore the meaning of that adjustment and then just the basic math of the sentence that was not disputed combined with the date that he originally alleges. None of that leads to over-incarceration. Can you help me with that math? Because what seems to be carved out there is that period of December 16, 2014, through December 4, 2015. But before that, he's incarcerated for 27 months. And after that, he's incarcerated for 46 months. The court's order says it should be 66. And adding all those up, it's instead 73. Where am I wrong in that math? Admittedly, that's why I'm a lawyer. Of course, Your Honor, with math, it's a little bit rough. But when we had worked this out, our calculation came out differently. And frankly, that's part of the problem here is that this is a calculation situation, which goes to the heck analysis as well in that separate issue that we were discussing earlier. He says that he's not making a miscalculation argument. He's relying on what words on pieces of paper tell him and the kind of arithmetic that Judge Krause just reviewed with you. Why aren't we supposed to accept that at this stage to go forward and let you on summary judgment straighten out the factual dispute that you seem to be having here? That's a fair point, Your Honor. It's certainly a type of case where we don't want to prejudge at this juncture. No one has been served. We can't really pre-weigh affirmative defenses or what could go forward on summary judgment. We don't want to have weight on one side of the scale if this were to go back to the district court. Our basis as amicus was basically to the court saying we don't need to get into the weeds of these really complex heck issues to the extent that this is resolved one way or another on the statute of limitations, failure to plead a plausible claim, no actual incarceration that was over the sentence. Let's put that to the side and assume we disagree with you. And so it matters whether this is heck barred or not for purposes of affirming on another ground. So on the on the heck bar. What is wrong with the analysis of the Fifth Circuit in cases like Hicks and pretended that seemed to parallel this one where, at least from what is alleged, there doesn't appear to be a disagreement with the parole board about what the proper release date was, that there was an overdetention in that circumstance. Why? Why is heck even relevant? This case is distinguishable from Hicks and also the Colvin case of the Fifth Circuit, because for one, that's a 14th Amendment case as opposed to an Eighth Amendment case. Our circuit is unique on this being Eighth Amendment, where we get into the issue of confinement versus sentence. And the question is not whether somebody is at liberty, but the question is, is it pursuant to a lawful order? So we're in a different boat because of that. And the question here is, we know, OK, this is confinement. But was it subject to a lawful order, which is a little bit different than Hicks? It's more like the recent decision. Now, granted, it was not published, but I'm thinking of it because Judge Porter was on it in Comrie, where we have an order from the court that's being faithfully executed. Whether it's right or wrong, that's not on parole and probation, but that's on the court, and it's on the legality of that confinement. So in this type of a case where it's not a seizure, like it's not somebody who was just, like, taken from their home for no good reason, which whether that happens is questionable, this is whether the punishment was being unduly extended beyond the lawful court order. But the court order here ends up amended for 66 months. Sixty-six months would take us to March 4th of 2019. Instead, it's extended the additional seven months, and we have the document from the parole board retroactively changing the maximum date to the 66-month date of March 4th. So on the face of it, why don't – isn't it plausible with what's pleaded here and with the court order and the parole board's notice that there was simply oversight and failure to conduct the proper investigation until he was well into over-detention? It's my understanding from the state court documents that were attached that that time difference that was added later on relates to the parole violations because it's related to the same matter. But either way, I do understand that with the district court, there should be some type of leniency, of course, because this is a pro se litigant in a civil rights case. The problem, though, is that this still goes back to the idea that this really is a discussion of the very duration of confinement, which is the type of issue that lies at the heart of habeas corpus. That is still heck territory. This is still calculations of what is the right sentence. It's not a matter of whether the sentence was appropriate for the crimes. It's a matter of how was the sentence calculated, what days were given for credits for time served, what days shouldn't have been for time served. But it doesn't – again, on the face of the documents, the parole board seems to agree that March 4th, 2019, was the proper maximum date. That's what is before us. So he's detained for an additional seven months. How is what he's alleging here a challenge to the lawful, you know, lawful order of detention when the only documents before us that speak to the length of detention, both the court order and the documents from the parole board, indicate that the maximum date was March 4th, yet he was held for an additional seven months? I see my time is up. May I answer? Yes, please. Thank you. The difference, too, is that this is a P&P document. It is not anything with a court order. This is going back to internal, like execution of a sentence in internal documents. We don't know what exactly it means, but we do know that the court orders we have go back to the date that we're saying is the basis of the statute of limitations bar, as well as the reason that there is no mathematical over-incarceration. So for that reason, that's why we respectfully submit the court should affirm, or at the very least, if this is going to be remanded, the court really should not get into the weeds on HEC and on a bunch of these really weighty type issues, but rather just send it back and let's have a clean slate without the scales weighed in one favor or the other. But the district court made a legal error in saying this is not barred by HEC. And using the analysis that Judge Krause just shared with you, that's wrong. Don't we, as a court that is duty-bound to articulate the law and ensure our colleagues apply it as we understand it, that we have to address HEC? Put aside your statute of limitations argument for a sec. Of course, Your Honor. Right? Don't we have to address HEC? What's our rationale? We can't just say do over. We have to give reasons. We have to identify a legal error. And wouldn't we have to engage with HEC, whether it's through the Fifth Circuit frame or a different one? Not necessarily, Your Honor. There is still, for example, the equitable tolling issue. There are some of the issues that were like the confusion on the face of the complaint that an opportunity to amend, that, for example, could be the basis for remanding, is that he should have at least an opportunity to amend to clarify his claims. If HEC error is apparent, I understand the court's discussion because, of course, that's what this court does. But under the facts of this case, it's not the time to really get into those weeds because we just don't know. The actual setup is just not established. If I could direct your attention back to 254, which Judge Krause was asking about. The document says that the parole violation max date of March 6, 2019. And then the next line says rescind board action of July 29, 2019 due to restructure. Can you tell us what board action was taken in July of 2019 and what is restructure? The dates are telling in this, Your Honor, because it's right after the correct date and then getting into the discussion on the parole violations and issues that Mr. Herrera had. It's my understanding that the restructure has to do with more administrative type matters, state issues, funding type issues, those types of like internal areas rather than say like the sentencing court issue. Doesn't that all suggest that we're not in heck world, we're in execution world? I would disagree, Your Honor, because it still goes back to calculation of what dates apply to when. Since there are these related parole violations and it also has the timing of when he was out at liberty. This still goes into the world of calculation and the amount of time incarcerated. There's just no way around that when we're talking about an Eighth Amendment claim for undue punishment because we have to get to under our laws, whether there was indifferent conduct, things like that, toward the incarceration and whether that was undue part of a sentence. Do you know what the acronym EGG is? I'm not aware, Your Honor. For the record, it's on 254. Judge Cross, anything else? No, thank you. Okay, thank you, Counselor. Okay, thank you. The Commonwealth's over-detention argument that Mr. Herrera was not in fact over-detained, as we saw in the amicus brief, is just a factual argument. And worse, it's a factual argument without any basis, arguing just we calculated it differently without any substantive response to the timeline that we laid out in the reply brief, and secondarily pointing to arguments outside the record and even outside the amicus brief. I think that all of these issues are interesting issues, but they are, as the Commonwealth says, academic issues because they're not in the record before this court to the extent that there's any merit in them. They can be raised on remand by the defendants. On heck, we had explained in our opening brief why the fact that different circuits analyze a claim of this nature under a different constitutional amendment is of no moment. For example, this court said in Wharton that such a claim could probably also be analyzed under the 14th Amendment due process analysis, but this court analyzes it under its precedent, under the Eighth Amendment. But there was no suggestion that there was a substantive difference. In Hicks as well, and I believe Crittenden, a number of these Fifth Circuit cases are even applying the because these claims typically are brought under claims of supervisory liability where the same deliberate indifference analysis applies. And I don't think I have heard anything from the Commonwealth explaining why it matters that a different constitutional amendment is analyzed with respect to this type of claim. And are you saying that because of what the purpose of heck is, which is not to have inconsistent outcomes based on the same facts, i.e. a civil outcome that is inconsistent with a criminal adjudication? Correct, Your Honor. Plaintiffs should not be collaterally attacking substantive determinations of their conviction or sentence court orders. With respect to equitable tolling, the Commonwealth says that this was apparent from the face of the complaint, but I think that the district court's analysis was limited to docket number one, where Mr. Herrera admittedly had no opportunity whatsoever to anticipate this issue and lay out the bases that he would articulate for equitable tolling. The district court's analysis of equitable tolling in the reconsideration opinion, where it decided this issue for the first time, consists of a single footnote just citing the legal standard. The last point I would make is that the Commonwealth is urging this court to reverse and remand without articulating any rule of law to apply going forward. I don't think that the court should do that respectfully. We have presented the legal issues in this case, and there is no real dispute about what the rule of law is that should apply to these heck claims. Go ahead. Going back to how we would articulate what that rule is, here, let's assume that it was just an erroneous calculation, and eventually, after a delay in the investigation, someone actually takes a look at it and figures out it's just an error, and then we have this notice with a new retroactive date. Let's assume that that's the case. Here, we have a document suggesting that the board itself agrees that there was a detention beyond the March 4th date, i.e. an over-detention. What about if there was a miscalculation and there was not agreement? Is the rule that you had articulated about challenging a valid legal basis for the detention, would that not apply because that's a factual dispute as opposed to a legal dispute, or would that also be heck barred? I do think that it is hard to answer that hypothetical question in the abstract, but I think that a claim of the nature that Your Honor is describing might not even state an Eighth Amendment over-detention claim. If there was, for example, some reason, or it might be a basis for asserting a qualified immunity defense, if there was some reason motivating the decision to extend the sentence, an arguable legal basis, that is a defense that this Court has recognized with respect to this type of claim. But I think to know if it's heck barred or not, you have to actually know what the claim is, and I think the rule that we are describing is a clear rule that will account for the cases in general, and there is no— And what is the rule exactly? I think that's what Judge Cross was also driving at. I think if you are challenging a substantive legal determination of an agency that provides a valid legal basis for extending the sentence, then that's heck barred. But in this calculation, which is a factual dispute, not a legal dispute, would not be heck barred? I think it probably depends on whether it was like a remotely viable legal basis or not. So, for example, here we have a District Court order that actually spells— Sorry, a Court of Common Pleas order spelling out exactly how these calculations are to be done. I agree that a case with more ambiguity might be a tougher case to decide, but I think that that case would have to be ultimately resolved on its facts to see whether it came— which side of the heck line it fell on. I think that even with a miscalculation case in general, it really depends what type of miscalculation. But most of the miscalculation cases that appear in our non-presidential opinions and in the District Courts are all miscalculation cases, and they're talking about being barred by heck. So it's the opposite. What's happening in the jurisprudence is the opposite of what you're proposing our test should be. Well, Your Honor, I would say that even if this Court were to adopt the rule that miscalculation cases generally are heck barred, I think that ultimately this always has to be decided on the facts because in order to know what kind of heck— whether something is heck barred or not, you have to look at the specifics of the claim. I think in general, an Eighth Amendment overdetention claim will not be—will not have this problem. And that's because the plaintiff agrees—I guess the plaintiff in the Civil Rights Act context would agree that what is— there's no dispute about what the sentence actually is? Correct. Maybe there's ambiguity in the word miscalculation because sometimes miscalculation involves legal determinations, and sometimes it's pure ministerial work. Does that distinction make sense? Yes, Your Honor. I think that distinction does make sense, and it is one I should have articulated better. I think what we have here as pled and as shown in these documents is that there appears to have been a ministerial error that was then corrected. Maybe miscalculation's not the right word because it has this other baggage. That makes sense, Your Honor. So if it's a ministerial error, is that not heck barred? I'm trying to figure out what your test is. Yes, Your Honor, I agree with that characterization. Okay. Judge Cross, anything else? No, thank you. Okay. Counsel, thank you for your arguments. Thank you, Your Honor. A unique situation where we have pro bono counsel and amicus counsel. So we thank you both for your service to enable us to do the work that we need to do. The Court will take this matter under advisement.